## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANDRES GARCIA URANGA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 20-0521 (ABJ) |
| U.S. CITIZENSHIP & | ) | |
| IMMIGRATION SERVICES, *et al.*, | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

On February 21, 2020, plaintiff Andres Garcia Uranga filed this lawsuit against the U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Homeland Security ("DHS"); Chad F. Wolf, the Acting Secretary of DHS; Kenneth Thomas Cuccinelli, II, Acting Director of USCIS; Donald Neufeld, Associate Director of Service Center Operations of USCIS; Michael Paul, Acting Deputy Director of the Vermont Service Center of USCIS; and William Connor, Field Office Director of the Nebraska Service Center of USCIS.  Compl. [Dkt. # 1]. Plaintiff submitted a petition for a U-visa and employment authorization documents four years ago, but the government has yet to make a decision.  This action asks the Court to find the delay to be unreasonable and to order the agency to act.  *See* Am. Compl. [Dkt. # 6].

Plaintiff seeks declaratory, mandamus, and injunctive relief that would compel defendants to determine his eligibility for placement on the U-visa waitlist, adjudicate his request for employment authorization documents, and issue him interim work authorization documents.  *Id.* at Prayer for Relief at 20–21.

1

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim.  Defs.' Mot. to Dismiss Am. Compl. [Dkt. # 16] ("Defs.' Mot.").  For the reasons set out in detail below, the motion will be granted in part and denied in part:  The First, Second, Fourth, Fifth, and Sixth Causes of Action will be dismissed, and the motion to dismiss the others will be denied.

The Court finds that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 does not deprive it of jurisdiction to consider the complaint in its entirety, but it does lack jurisdiction to review the claims alleging a failure to make the discretionary decision, pursuant to 8 U.S.C. § 1184(p)(6), to grant or deny employment authorization documents pending the decision on plaintiff's U-visa application. The Court concludes that it has jurisdiction to hear the claims questioning the delay in determining plaintiff's eligibility for placement on the U-visa waitlist. But while it is deeply concerned about the length of time the plaintiff has been waiting for this decision and it cannot in good conscience characterize it as "reasonable," it is constrained by Circuit precedent to refrain from ordering the agency to advance consideration of plaintiff's request ahead of those filed by thousands of others who have also been waiting too long.  Finally, the Court finds that it has jurisdiction to hear plaintiff's claim concerning unreasonable delay in the consideration of his request for interim work authorization documents; that the 2011 regulation requiring consideration within a set period of time governs plaintiff's application; and that the complaint states a claim for agency action unlawfully withheld given the failure to adhere to the plain terms of the regulation.  Finally, plaintiff's request to invalidate the revised regulation for failure to comply with notice and comment procedures will be dismissed.

# BACKGROUND

## Statutory & Regulatory Background

The U-Visa program was created as part of the Victims of Trafficking and Violence Protection Act of 2000.  Am. Compl. ¶ 23.  Its purpose "was to 'strengthen the ability of law enforcement agencies to detect, investigate and prosecute cases' by encouraging undocumented victims of crimes to step forward and cooperate with law enforcement, and thereby improve public safety."  Am. Compl. ¶ 23, quoting Victims of Trafficking and Violence Protection Act of 2000, H.R. 3244, 106th Cong. § 1513(a)(2) (2000).

A person qualifies for a U-visa if he or she: (1) "has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity;" (2) "possesses information concerning criminal activity"; (3) "has been, is, or is likely to be helpful" to government officials regarding the criminal activity; and (4) the criminal activity at issue "occurred in the United States." 8 U.S.C. § 1101(a)(15)(U)(i)(I)–(IV).[1]  If USCIS approves the petition, the petitioner will receive lawful nonimmigrant status and employment authorization for up to four years.  8 U.S.C. § 1184(p)(6); 8 U.S.C. § 1184(p)(3)(B); 8 C.F.R. § 274a.12(a)(19).

There is a statutory cap that limits the number of U-visas issued each year to 10,000. 8 U.S.C. § 1184(p)(2).  Anticipating that the statutory cap would be met within the first few years of enactment, USCIS created a regulatory waiting list process.  8 C.F.R. § 214.14(d)(2); New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (Sept. 17, 2007).  If USCIS determines that a U-visa petition is approvable, but a visa

---

[1]     In 2006, Congress directed the Secretary of the Department of Homeland Security ("DHS") to promulgate regulations for the U-visa statute.  Violence Against Women Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960, 3066 (2006).  The regulations give USCIS "sole jurisdiction over all petitions for U nonimmigrant status."  8 C.F.R. § 214.14(c)(1).

is not available due to the statutory cap, the petitioner must be placed on the waiting list.  8 C.F.R. § 214.14(d)(2).   The order of approval for those on the waiting list is also spelled out in the regulation:

> USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status. After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed.

*Id*.

Once USCIS determines a petitioner is eligible for a U-visa and places him on the waiting list, he and his qualifying family members receive "deferred action" if they are in the United States. 8 C.F.R. § 214.14(d)(2).   Deferred action is "an act of administrative convenience to the government which gives some cases lower priority" for removal.  8 C.F.R. § 274a.12(c)(14).  A person who has received deferred action based upon placement on the U-visa waiting list does not accrue unlawful presence under section 212(a)(9)(B) of the Immigration and Nationality Act, 8 U.S.C. §1182(a)(9)(B).  8 C.F.R. § 214.14(d)(3).  "However, a petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS." *Id*.  Unless specific circumstances apply, USCIS processes U-visa applications in the order they are received.  *See* 72 Fed. Reg. 53,014, 53,033–34.

The application form for the U-visa, Form I-918, provides the applicant with an option to request Employment Authorization Documents ("EAD") by checking a box.  This enables an applicant to apply for the visa and for EAD in one step.  *See* 72 Fed. Reg. 53,014 (the one-step process was contemplated during rulemaking; USCIS designed the form so that it could serve the dual purpose of requesting a U visa and employment authorization).

4

If an individual has a pending, bona fide application for a U-visa, the secretary "may grant work authorization" to that individual.  8 U.S.C. § 1184(p)(6).  USCIS may, in its discretion, also authorize employment for those placed on the waitlist.  8 C.F.R. § 214.14(d)(2).

There was a time when agency regulations required USCIS to adjudicate EAD applications within 90 days.  As of 2011, the applicable regulation stated: "USCIS will adjudicate the application within 90 days from the date of receipt of the application . . . .  Failure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days."  8 C.F.R. § 274a.13(d) (2011).  This requirement was eliminated on November 18, 2016, and the amended regulation became effective on January 17, 2017.  *See* Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers, 81 Fed. Reg. 82,398 (Nov. 18, 2016).

 Once a petitioner submits a U-visa application, USCIS is supposed to complete a "de novo review of the petition and evidence," and "issue a written decision approving or denying Form I-918."  8 C.F.R. § 214.14(c)(5).  "If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS will approve Form I-918."  *Id.* § 214.14(c)(5)(i).  "An alien granted U-1 nonimmigrant status is employment authorized incident to status.  USCIS automatically will issue an initial Employment Authorization Document (EAD) to such aliens who are in the United States."  *Id.* § 214.14(c)(7).

Federal regulations further provide that a non-citizen who is "the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U-1 nonimmigrant status," but that "[t]he filing of a petition . . . has no effect on ICE's authority to execute a final order."  8 C.F.R. § 214.14(c)(1)(ii).

Thus, the statutory and regulatory scheme contemplates a number of decisions the agency could be asked to make, all of which are involved in this case:  (1) whether an applicant is eligible to receive a U-visa; (2) whether an applicant is eligible for a U-visa that has been denied simply because of the statutory cap and therefore he should be placed on the waiting list; (3) whether an applicant has a pending, bona fide U-visa application, and therefore should be granted EAD for the entire period while the U-visa application is pending; and (4) pursuant to the now repealed version of 8 C.F.R. § 274a.13(d) (2011), whether an EAD request has been pending for more than 90 days and therefore the applicant is entitled to interim work authorization documents for up to 240 days.

### Factual & Procedural Background

Plaintiff entered the United States unlawfully in 1999.  *See* Decl. of Andres Garcia Uranga, Ex. 4 to Pl.'s Mot. [Dkt. # 7-4] ("Uranga Decl.") ¶ 2.  In 2001, he met his wife, who is a U.S. citizen, and they married in 2002.  *Id.* ¶ 3.  By then, they had two children together.  *Id.*

In the summer of 2004, plaintiff learned that his grandfather was in critical health, and so he traveled back to Mexico to be with him.  Uranga Decl. ¶ 4.  He returned to the United States that fall.  *Id*. ¶ 5.  During a routine car stop, he encountered immigration officials, and he was eventually apprehended by Immigrations and Customs Enforcement ("ICE") and deported to Mexico.  *Id.* ¶¶ 6–7.  In 2006, plaintiff applied for a visa so that he could legally reside in the United States.  *Id.* ¶ 8.  His application was denied in January 2009.  *Id.* ¶¶ 8–9.  He attempted to reenter the United States a few weeks later, but he was caught by U.S. Customs and Border Patrol ("CBP") and again deported.  *Id.* ¶ 10.  He attempted to enter the United States on two other

occasions that year, but both times he was sent back to Mexico.  *Id.* ¶¶ 12–13.   Finally, he successfully reentered the United States, without permission, in October 2009.  *Id.* ¶ 14.

In 2015, plaintiff was the victim of an armed robbery that took place when he was taking his then nine-year-old son to school.  Uranga Decl. ¶ 16; Am. Compl. ¶ 15.  He cooperated with law enforcement during the investigation of the crime, and based on this incident, he applied for the U-visa program.  Uranga Decl. ¶ 17; Am. Compl. ¶ 39.  When he submitted his U-visa application, he checked the box requesting EAD.  Am. Compl. ¶ 40(a).  The application was received by the agency on June 23, 2016.  Am. Compl. ¶ 39.  The request for a U-visa and EAD are still pending today.  *Id.* ¶ 43.

On February 12, 2020, plaintiff was arrested, although he does not know the basis for the arrest and no charges were filed.  Uranga Decl. ¶ 21.  Soon after, he was transferred to ICE custody. *Id.*  While in ICE Custody, on February 14, 2020, he was given a document indicating the government's decision to reinstate a prior order of removal that was issued in 2009.  *See* Notice of Intent/Decision to Reinstate Prior Order, Ex. 8 to Pl.'s Mot. [Dkt. # 7-8].

On February 21, 2020, plaintiff filed his complaint.  Compl. [Dkt. # 1].  ICE sought to execute the removal order on February 26, 2020, and plaintiff filed a motion for temporary restraining order, requesting that the Court enjoin defendants from removing him until the issues in the complaint could be adjudicated.  Pl.'s Mot. for TRO [Dkt. # 4] at 1.  In light of the representations the government made during a telephone conference with the Court that day, the Court granted the motion until the parties could submit briefs and the Court could hold a status conference on the issues.  Min. Order (Feb. 26, 2020).  The Court scheduled the status conference for March 27, 2020, but it was rescheduled for May 8, 2020 in light of the COVID-19 pandemic. Min. Order (Mar. 24, 2020).

On March 10, plaintiff filed an amended complaint, [Dkt. # 6], and he filed a motion for preliminary injunction.  [Dkt. # 7].  Defendants opposed the motion for preliminary injunction on April 23, 2020.  Defs.' Opp. to Mot. for Prelim. Inj. [Dkt. # 10].

On May 8, 2020, with the consent of the parties, the Court consolidated the motion for preliminary injunction with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).  Min. Order (May 8, 2020).  Plaintiff also filed a status report on May 4, 2020, stating that he remains in ICE custody, and that ICE conducted a "Post Order Custody Review" but "declined to release him on an order of supervision."  Status Report [Dkt. # 13] at 2.  The status report also states that his request to ICE for an administrative stay of the removal order, tendered on February 25, 2020, remains unadjudicated.  *Id.*

On May 11, 2020, defendants filed a motion to dismiss.  Defs.' Mot.  Plaintiff opposed the motion on June 8, 2020.  Pl.'s Opp. to Defs.' Mot. [Dkt. # 19] ("Pl.'s Opp.").  On June 19, 2020, plaintiff filed a notice indicating that a Magistrate Judge in the Western District of Missouri ordered that he be released on a "$20,000/10% cash bond," which plaintiff paid on June 12, 2020.  Notice [Dkt. # 20] at 1.  ICE officials did not release him; instead, plaintiff was transferred "into the custody of the U.S. Marshals."  Pl.'s Opp. at 7.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to

a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

## Subject-Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l*

*Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 556.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, citing *Twombly*, 550 U.S. at 555.

### ANALYSIS

Plaintiff claims first that defendants have unreasonably delayed determining his eligibility for the U-visa waitlist, in violation of the APA (First Cause of Action), Am. Compl. ¶¶ 46–50, and he also asks the Court to issue a writ of mandamus ordering the government to determine his eligibility for a U-visa (Fifth Cause of Action).  Am. Compl. ¶¶ 64–70.

He also claims that defendants have failed to adjudicate his EAD application, in contravention of 8 U.S.C. § 1184(p)(6) (Second Cause of Action), Am. Compl. ¶¶ 51–54, and that defendants have failed to issue interim work authorization documents, pursuant to the 2011 version of 8 C.F.R. § 274a.13(d) (Third Cause of Action).   Am. Compl. ¶¶ 55–59.  Plaintiff requests writs of mandamus in connection with these claims as well (Sixth and Seventh Causes of Action).  Am. Compl. ¶¶ 71–82.

Finally, plaintiff claims that the 2017 version of 8 C.F.R. § 274a.13(d) – which eliminated the requirement to adjudicate EAD applications within 90 days – did not undergo the notice-and-comment procedures required by the APA (Fourth Cause of Action).  Am. Compl. ¶¶ 60–63.

Defendants argue that sections 1252(g), 1252(a)(5), and 1252(a)(2)(B)(ii) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), deprive the Court of jurisdiction to hear plaintiff's claims, and they submit that even if the Court does have jurisdiction, plaintiff has failed to state a claim upon which relief may be granted.  *See* Defs.' Mot.

## I.   8 U.S.C. § 1252(g) and § 1252(a)(5) do not apply.

Defendants argue first that the Court lacks jurisdiction over the complaint in its entirety because plaintiff's claims "collaterally challenge the deportation proceedings currently pending against him," Defs.' Mot. at 14, and the IIRIRA strips district courts of jurisdiction to stay or enjoin a non-citizen's removal.  *Id.*

The statute provides:

> Except as provided in [8 U.S.C. § 1252] . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C § 1252(g).

11

But defendants' suggestion that plaintiff's complaint falls within the jurisdictional bar is contrary to *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999), in which Supreme Court expressly rejected applying § 1252(g) in that manner. In that case, the Court held that the provision "applies only to three discrete actions": the Attorney General's "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original), quoting 8 U.S.C. § 1252(g). It does not apply to the "many other decisions or actions that may be part of the deportation process." *Id.*; *see Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S.Ct. 1891, 1907 (2020) (reaffirming that 8 U.S.C. § 1252(g) is narrow and does not cover "all claims arising from deportation proceedings or imposes a general jurisdictional limitation").

Plaintiff is not challenging the commencement, adjudication, or execution of his removal order in this case; he is not even challenging the merits of a decision on his eligibility for a U-visa or work authorization. He is challenging the government's delay in adjudicating his U-visa waitlist eligibility and work authorization documents at all. Thus, section 1252(g) does not apply and it does not deprive the Court of jurisdiction.

For the same reason, the Court finds that section 1252(a)(5) does not apply. This provision provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). Plaintiff is not seeking review of an order of removal.

Therefore, the Court finds that sections 1252(g) and 1252(a)(5) do not divest it of jurisdiction.

II.    **The Court does not have jurisdiction to review plaintiff's claim that the agency unreasonably delayed adjudication of his EAD request under 8 U.S.C. § 1184(p)(6).**

In the Second Cause of Action, plaintiff alleges that defendants' refusal to adjudicate his request for EAD while he awaits the U-visa decision pursuant to 8 U.S.C. § 1184(p)(6) constitutes "agency action unlawfully withheld or unreasonably delayed" under the APA.  Am. Compl. ¶¶ 51–54, citing 5 U.S.C. § 706(1).  And in the Sixth Cause of Action, plaintiff seeks a writ of mandamus directing that this request be adjudicated.  *Id.* ¶¶ 71–76.

The statute underlying plaintiff's claims in the Second and Sixth Causes of Action states that "[t]he Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title."  8 U.S.C. § 1184(p)(6).  Defendants contend that the decision to grant the permission to work is purely discretionary, and that the IIRIRA deprives the Court of jurisdiction to hear a challenge to a discretionary action.  Section 1252(a)(2)(B)(ii) states:

> (B)    Denials of discretionary relief - Notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review—
>
> (ii)    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Defendants argue that since section 1184(p)(6) accords the Secretary of Homeland Security unfettered discretion to issue work authorization documents to those with pending, bona fide U-visa applications – that is, it says, "the Secretary *may*" – section 1252(a)(2)(B)(ii) strips the Court of jurisdiction to review the Secretary's handling of the EAD requests.  They also submit that the

APA and Mandamus Act deprive the Court of the ability to act.  The Court agrees that it lacks the authority to hear these claims.

Section 706(1) of the APA states that a "reviewing court shall – (1) compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The Supreme Court has held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required* to take."  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).  Similarly, to show entitlement to mandamus, a plaintiff must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists. *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case.  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

Defendants argue that the Secretary is not required to take any discrete actions under the provision related to EAD, section 1184(p)(6), so the agency's inaction does not violate a clear duty to act.  *See* Defs.' Mot. at 15–16.  Plaintiff emphasizes that he is not asking the Court to order the Secretary to issue the EAD – only to order that the agency determine his *eligibility* under the provision.  *See* Am. Compl., Prayer for Relief at 20–21.

The statute gives the Secretary the authority to issue EAD to those awaiting consideration of "pending, bona fide" applications for U-visas.  8 U.S.C. § 1184(p)(6).  And this authority was granted specifically because Congress recognized that the wait could be quite long.  But there is no indication in the statute that the Secretary is *required* to evaluate whether a petitioner's application is bona fide, and therefore, the Court agrees with the government that these two counts fail for lack of jurisdiction.

An examination of section 1184(p)(6) itself adds force to the government's argument.  The

provision used mandating language when it addresses certain extensions of U-visas:

> The authorized period of status of an alien as a nonimmigrant under section 1101(a)(15)(U) of this title shall be for a period of not more than 4 years, but *shall* be extended upon certification from a . . . law enforcement official, prosecutor, judge, or other . . . authority investigating or prosecuting criminal activity described in section 1101(a)(15)(U)(iii) of this title that the alien's presence in the United States is required to assist in the investigation or prosecution of such criminal activity. . . .  Such alien's nonimmigrant status *shall* be extended beyond the 4-year period authorized under this section if the alien is eligible for relief under section 1255(m) of this title and is unable to obtain such relief because regulations have not been issued to implement such section and shall be extended during the pendency of an application for adjustment of status under section 1255(m) of this title.

*Id.* (emphasis added).   In contrast, the last sentence of section 1184(p)(6) states that "[t]he

Secretary *may* grant work authorization to any alien who has a pending, bona fide application for

nonimmigrant status under section 1101(a)(15)(U) of this title."  *Id.* (emphasis added).  In other

words, there is no question that Congress knew the words to choose if it intended to require the

Secretary to adjudicate every U-visa application to determine if it was bona fide.

The regulations relating to the consideration of U-visas also support making a distinction

between the requirement to act on the applications for the visas themselves and the discretion to

issue EAD while the application is pending.  Those regulations make it clear that USCIS is required

to determine whether a petitioner is eligible for a U-visa, even if the ultimate decision to issue a

U-visa is discretionary.  *See* 8 C.F.R. § 214.14(c)(5) ("After completing its de novo review of the

petition and evidence, USCIS *will* issue a written decision approving or denying form I-918 . . . .");

*id.* § 214.14(c)(5)(i) ("If USCIS determines that the petitioner has met the requirements for U-1

nonimmigrant status, USCIS *will* approve Form I-918."); *id.* § 214.14(d)(2) ("All eligible

petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on

a waiting list and receive written notice of such placement.") (emphases added).  Yet there are no regulations implementing section 1184(p)(6) that require that any decision be rendered as to the bona fide status of the application or the eligibility for EAD.

Plaintiff relies heavily on an unpublished decision from the Eastern District of New York, *Rodriguez v. Nielson* to argue that the Secretary has a non-discretionary duty to review each application to determine whether it is "bona fide."  Pl.'s Opp. at 11, citing *Rodriguez v. Nielson*, 16-CV-7092 (MKB), 2018 WL 4783977, at *10 (E.D.N.Y. Sept. 30, 2018).  Faced with a similar argument, the *Rodriguez* court found that section 1184(p)(6) contains specific eligibility requirements, and it observed that "[t]he Supreme Court has held in the context of immigration relief that when a statute provides specific standards of eligibility for a benefit or relief, an individual applying for that relief has a 'right to a ruling,' even if the *outcome* of that ruling is discretionary."  *Id.*, *quoting INS v. St. Cyr*, 533 U.S. 289, 307–08 (2001).  The opinion also quotes a reference in *St. Cyr* to the Supreme Court's earlier decision in *Jay v. Boyd:* "[e]ligibility that was 'governed by specific statutory standards' provided 'a right to a ruling on an applicant's eligibility,' even though the actual granting of relief was 'not a matter of right under any circumstances, but rather is in all cases a matter of grace.'").  *Rodriguez*, 2018 WL 4783977, at *10, quoting *St. Cyr*, 533 U.S. at 308, quoting *Jay v. Boyd*, 331 U.S. 345, 353–54 (1956).

But this Court is not persuaded by the *Rodriquez* court's application of the Supreme Court precedent.  The only requirement in the provision relating to the grant of EAD is that the U-visa application must be pending and "bona fide," and what this means is not defined by statute or regulation.  The provision states that EADs may be issued to those with a bona fide application "under section 1101(a)(15)(U) of this title."  8 U.S.C. § 1184(p)(6).  Does this signal that one could use the criteria for U-visa eligibility to review whether an individual has a "bona fide" pending

16

application for purposes of the interim work authorization decision?  The problem is that section 1184(p)(6) does not state that the agency may grant a work authorization for anyone who is "eligible" for a U-visa; it says it may grant the authorization to someone with a pending "bona fide" application, and someone who may turn out to be ineligible at the end of the day might very well submit an application that is bona fide.  The term "bona fide" could refer to petitions made in "good faith" or applications that are generally in order, but it is not clear what Congress meant, and there are no regulations implementing this part of the statute.  So the provision does not provide the "specific statutory standards" contemplated by the Supreme Court by which the agency must act to issue work authorization documents.

Furthermore, the ruling in *St. Cyr* arose in the unique context of the constitutional right to habeas corpus.  533 U.S. at 289.  In *St. Cyr*, the respondent was a lawful permanent U.S. resident who had pled guilty to a criminal charge that made him deportable.  *Id.*  While he would have been eligible for a waiver of deportation under the immigration law in effect when he was convicted, his removal proceedings began after the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) were enacted.  The government claimed that these laws withdrew the Attorney General's authority to grant St. Cyr a waiver.  The Court reviewed whether the AEDPA and IIRIRA stripped the Court of jurisdiction, noting that the government must overcome the "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction."  *Id.* at 298.  It examined the constitutional right to habeas corpus, and how the writ of habeas corpus has historically been used to "review[] the legality of Executive detention" in the immigration context.  *Id.* at 301, 305–06. It ultimately held that the laws did not deprive the courts of jurisdiction to hear the petitioner's habeas corpus claim.  In dicta, the Court observed that "[h]abeas courts also regularly answered

17

questions of law that arose in the context of discretionary relief." *Id.* at 307.  And one of those questions of law was whether a petitioner had a right to a ruling on an applicant's eligibility even when the ultimate decision was discretionary.  Thus, the statement from *St. Cyr* quoted by the *Rodriguez* court was not a general statement of administrative law principles or even immigration law principles.

Furthermore, the case that *St. Cyr* cited for the language plaintiff would have this Court apply, *Jay v. Boyd*, 351 U.S. 345 (1956), also arose in the habeas context.  It involved the provision of the Immigration and Nationality Act stating that the Attorney General "'may in his discretion' suspend deportation of any deportable alien who meets certain statutory requirements relating to moral character, [hardship] and period of residence within the United States." *Id.* at 351.  The Attorney General adopted specific regulations implementing this section, including rules delegating the inquiry to certain officers, assigning the burden of proof to the petitioner, allowing for the submission of evidence, and requiring a written decision.  *Id.* at 351–52.  Under those circumstances, the Court held that "eligibility for the relief here involved is governed by specific statutory standards which provides a right to a ruling on an applicant's eligibility." *Id.* at 353.  But here, no such "specific statutory standards" exist.

Thus, while Congress gave the government the authority to issue EAD to those with pending, bona fide U-visa applications, it did not require the agency to determine whether any particular applicant was eligible to receive them.  Because it is purely a discretionary decision, the Court does not have jurisdiction to review the Second Cause of Action pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii).

For the same reasons, the Court does not have jurisdiction to issue a writ of mandamus in relation to this claim.  The Mandamus Act, 28 U.S.C. § 1391, makes clear that a court has

jurisdiction to issue a writ of mandamus only if plaintiff demonstrates "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n*, 812 F.3d at 189.   These three requirements are jurisdictional. *Id.*   Here, plaintiff has failed to clear the first factor.   Because the agency is not required to adjudicate plaintiff's work authorization request or issue the relief that he seeks under section 1184(p)(6), he has no clear, indisputable right to relief, and the Court will dismiss the Sixth Cause of Action for lack of jurisdiction as well.

**III.    U-visa waitlist eligibility**

> **A. 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive the Court of subject matter jurisdiction to review the pace of adjudication of plaintiff's eligibility for the U-visa waitlist.**

Plaintiff brings claims under both the APA and the Mandamus Act alleging that the agency has unreasonably delayed adjudication of his eligibility for the U-visa waitlist.   Am. Compl. ¶¶ 46–50, 64–70.   Defendants argue that determining whether plaintiff is eligible for the waitlist is a discretionary decision, and thus section 1252(a)(2)(B)(ii) of the IIRIRA deprives the Court of jurisdiction over the First and Fifth Causes of Action.   Defs.' Mot. at 14–15.

Defendants do not point the Court to any specific statute that confers discretion upon the Attorney General or Secretary of Homeland Security to adjudicate whether an applicant should be placed on the waitlist.   The regulation creating the waiting list states: "All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement."   8 C.F.R. § 214.14(d)(2) (emphasis added). Eligibility is not a vague or undefined term; it is governed by 8 U.S.C. §1101(a)(15)(U) and the specific regulatory standards set forth in 8 C.F.R. § 214.14(b).   Thus, while the outcome of the eligibility determination is a matter committed to the agency's discretion under 8 U.S.C. §1101(a)(15)(U),

the government must assess a petitioner's eligibility in order to comply with the mandatory requirement to include eligible applicants on the waitlist. *See Patel v. Cissna*, 400 F. Supp. 3d 1373, 1384 (M.D. Ga. 2019) ("There is no dispute that [d]efendants are required by law to decide whether to place [p]laintiff on the waiting list and have not yet done so."); *see also M.J.L. v. McAleenan*, 420 F.Supp.3d 588, 596 (W.D. Tex. 2019) (concluding, in the context of U-Visas, that "a discretionary decision to grant or deny an application is distinct and separate from the nondiscretionary duty to adjudicate those applications").[2]   And therefore, this is a decision that must be made in a timely fashion.

Since making the threshold determination of whether an applicant is eligible for the waiting list is not "specified under" IIRIRA "to be in the discretion of the Attorney General or the Secretary of Homeland Security," 8 U.S.C. § 1252(a)(2)(B)(ii), IIRIRA does not preclude the Court from reviewing the claim.

### B. Plaintiff has failed to state a claim for unreasonable delay in connection with the determination of his U-visa eligibility under the APA and the relevant binding authorities.

To determine whether a delay in agency action is unreasonable, the Court employs the six-factor "*TRAC* test":

> (1) the time agencies take to make decisions must be governed by a rule of reason;

---

2      Defendants cite *Gonzalez v. Cissna*, 364 F. Supp. 3d 579, 584 (E.D.N.C. 2019), appeal docketed, No. 19-1435 (4th Cir. Apr. 23, 2019), in support of their argument that the timing of adjudicating U-visa applications is discretionary.  *See* Defs.' Mot. at 18.  But in that case, one of the plaintiffs' claims was that USCIS "ha[d] unreasonably failed to provide them with work authorizations under 8 U.S.C. § 1184(p)(6)," *Gonzalez*, 364 F. Supp. 3d at 582–83, and it was that claim that failed for lack of subject matter jurisdiction because the decision of whether to *grant* work authorization is a discretionary one.  *See id*. at 584.  The other claims – which challenged the agency's adjudication of the work authorization and U-visa petitions – were considered on the merits and dismissed for failure to state a claim.  *See id*. at 584–86.

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.[3]

*Telecoms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (internal quotation marks and citations omitted).

The D.C. Circuit has reiterated that these factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), quoting *TRAC*, 750 F.2d at 80. Indeed, "[e]ach case must be analyzed according to its own unique circumstances . . . . Each case will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).

The first factor – whether the time the agency takes to make a decision is governed by a "rule of reason" is the "most important." *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012), quoting *In re Core Commc'ns, Inc.*, 531 F.3d at 855. Regulations implementing the U-visa statute provide that, except in certain circumstances not applicable here, the agency is bound to process applications in the order it receives them. 8 C.F.R. § 214.14(d)(2);

---

3       The Court notes that plaintiff has not alleged that there has been any impropriety underlying the agency's delay.

72 Fed. Reg. 53,014, 53,033–34.  Courts have found that processing first-filed petitions before later-filed petitions constitutes a "rule of reason."  *See Gonzalez*, 364 F. Supp. 3d at 585–86 (finding that the agency's order of processing applications in the U-visa context constitutes a "rule of reason"); *A.C.C.S. v. Nielsen*, CV 18-10759, 2019 WL 7841860, at *4 (C.D. Ca. Sept. 17, 2019) (finding that USCIS's rules for addressing petitions are reasonable).  The first factor therefore weighs in favor of defendants.

The second factor provides that "[i]f a specific deadline for final agency action is provided by Congress, the reasonableness of the delay can be measured in relation to this deadline." *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 38 (D.D.C. 2000).  Plaintiff points to 8 U.S.C. § 1571(b), *see* Pl.'s Opp. at 21, in which Congress announced that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  The provision applies to U-visa petitions.  *See id*.

The D.C. Circuit has observed that a "sense of Congress" preamble may be non-binding, *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 at n. 26 (D.C. Cir. 2015), citing *Emergency Coal. to Def. Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n. 6 (D.C. Cir. 2008), and that this type of statutory provision represents "a statement of opinion" rather than a "statement of fact."  *Id*.  But the question posed in *TRAC* is not whether Congress has established a binding timetable; it asks only whether Congress has "provided . . . [an] indication of the speed with which it expects the agency to proceed."  *TRAC*, 750 F.2d at 80.  This provision is certainly an indication of what the legislature had in mind – after all, Congress had the option of saying nothing on the subject at all.  And here, plaintiff's application has been pending for over four years, three and a half years longer than Congress's stated expectation.  Thus, this factor weighs in favor of plaintiff.

22

*See A.C.C.S.*, 2019 WL 7841860, at *5 (finding this factor weighs slightly in favor of the petitioner in light of § 1571(b)), citing *Khan v. Johnson*, 65 F. Supp. 3d 918, 930 (C.D. Cal. 2014) and *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014).

The third factor – whether the delay affects only economic interests versus human health and welfare interests – weighs somewhat in favor of the plaintiff. While the waitlist eligibility determination could affect plaintiff's entitlement to employment authorization documents, *see* Am. Compl. ¶ 44, the long-awaited assessment bears on more than just those economic interests. It could determine whether his removal order would be subject to deferred action, which would determine whether he can remain in the United States. Plaintiff has four children and a wife in the United States, and his deportation would affect their welfare. Am. Compl. ¶ 15. He further alleges that if deported, he would face "threats of poverty and violence in his home of Chihuahua, Mexico." *Id.* ¶ 45. For similar reasons, the fifth factor – the nature and extent of the interests prejudiced by the delay – weighs in favor of the plaintiff, since the interests prejudiced by the delay pertain to whether plaintiff can legally reside with his family and earn a living to help support them within this country.

The fourth factor – "the importance of 'competing priorities' in assessing the reasonableness of an administrative delay" – weighs in favor of defendants, *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003), and the precedents that this Court is required to follow suggest that this is a significant hurdle for plaintiff to overcome. The D.C. Circuit has put particular weight on this factor, "refus[ing] to grant relief, even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" *Mashpee*, 336 F.3d at 1100, quoting *In re Barr Labs.*, 930 F.2d 72, 75 (D.C. Cir. 1991); *see Am.*

*Hosp. Ass'n*, 812 F.3d 192 (affirming that "our precedent forecloses" mandamus relief "that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").

There are currently more than 152,000 pending principal U-visa applications, and there are only three service centers that process them.[4]  USCIS, U Visa Filing Trends, April 2020, at 3, https://www.uscis.gov/sites/default/files/document/reports/Mini_U_Report-Filing_Trends_508.pdf (last visited Aug. 13, 2020).  The agency has estimated that at the Vermont Service Center, where plaintiff applied, the average processing time from initial filing to waiting list determination is 57 to 57.5 months.  *See* USCIS, Case Processing Times, Processing time for Petition for U Nonimmigrant Status (I-918) at Vermont Service Center, available at https://egov.uscis.gov/processing-times/ (last visited Sept. 22, 2020).  As of the date of the filing of this complaint, plaintiff's wait time has been slightly under that benchmark.

Defendants assert that "the processing time for U nonimmigrant status petitions and related employment authorization applications is traceable to competing adjudicative priorities and resource limitations."  Defs.' Reply at 13.  They explain that while applications for U-visas have increased, so have other filings that must be adjudicated at the same service centers, and they

---

[4]     Defendants state that before 2016, there were only two service centers processing applications.  In July 2016, USCIS began reviewing U-visa petitions at an additional service center to address the U-visa application backlog.  USCIS, Nebraska Service Center to Begin Processing Certain Form I-918 Cases, https://www.uscis.gov/archive/nebraska-service-center-begin-processing-certain-form-i-918-cases (June 9, 2019).  This change allowed USCIS to transfer 3,000 of the oldest pending petitions from the Vermont Service Center to the Nebraska Service Center, and to add 24 officers to the U-visa adjudication team.  USCIS, U Nonimmigrant Status Program Updates, https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes/victims-of-criminal-activity-u-nonimmigrant-status/u-nonimmigrant-status-program-updates (last visited Sept, 25, 2020).

submit that the agency does not have enough funding to cover current operational costs. *Id.* at 13–14. In other words, there are no "un-utilized resources which could be assigned to the U caseload." *Id.* at 14. According to defendants, to order the government to move plaintiff to the head of the line would impermissibly interfere with the agency's "unique" and "authoritative" position to "allocate its resources in the optimal way." Defs.' Mot. at 30, quoting *In re Barr Labs.*, 930 F.2d at 76; *see id.* at 75 (the management of scarce resources is "a problem for the political branches to work out."); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) ("[W]here resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities."). Even if this Court were to decide that it lacks sufficient information to declare resource allocation to be the culprit here, and it finds the delay to be equally consistent with mismanagement, the Circuit would discourage a ruling in plaintiff's favor. In this situation, where a "judicial decree advancing one applicant" would not cure the agency's "incompetence, if it exists and even if it is severe," the Court has found "no basis for reordering agency priorities." *In re Barr Labs.*, 930 F.2d at 76.

The Court is not at all satisfied that there is any acceptable justification for a delay of over four years, [5] but it is notable that plaintiff does not point to any unique considerations that warrant an expedited review of his U-visa petition; nor does he contend that the agency has treated him unfairly, or differently than any of the other tens of thousands of applicants who have also waited far too long. *See In re Barr Labs.*, 930 F.2d at 75 (recognizing that that the unfair treatment of a particular applicant could warrant judicial relief since it would "then advance the cause of equal treatment"). Since ordering the agency to adjudicate plaintiff's U-visa waitlist eligibility now

---

[5]     The agency received plaintiff's application on June 23, 2016. Am. Compl. ¶ 39.

would merely move him up the line, and move everyone else back, in the view of the Court of Appeals, that would create more unfairness than it would remedy given the likely number of equally worthy applicants.

The Court tends to agree with the plaintiff that four years is a substantial and unreasonable period of time to await a decision. But, "a finding that delay is unreasonable does not, alone, justify judicial intervention," *In re Barr Labs.*, 930 F.2d at 75, even when the agency's pace is "sluggish," *id.* at 76, or "glacial," *Mashpee*, 336 F.3d at 1097. And the Court of Appeals has cautioned that the reasonableness of a delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but [it] will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee*, 336 F.3d at 1102.

In sum, three of the five relevant factors weigh in favor of plaintiff, and the first factor, which has been characterized as the "most important," weighs in favor of defendants. Applying the fourth factor consistent with Circuit precedent, the Court finds that the four-year delay in

processing one of a large number of applications does not warrant judicial intervention.[6]  Thus, plaintiff has failed to state a claim for unreasonable delay with respect his waitlist eligibility, and the Court will dismiss the First Cause of Action.  If it is indeed the sense of Congress that visa applications should be reviewed within 180 days, it is incumbent upon the legislature to insist that the agency receives the means to do so.

The Court will also dismiss the Fifth Cause of Action, which requests a writ of mandamus in connection with plaintiff's waitlist eligibility, because the *TRAC* factors are also used to determine whether an agency's delay is "so egregious" as to warrant mandamus relief.  *In re Core Commc'ns, Inc.*, 531 F.3d at 855.  Given the Court's ruling that the *TRAC* factors weigh in favor of the government, plaintiff's mandamus claims are deficient as well.  *See Beshir v. Holder*, 10 F. Supp. 3d 165, 172 (D.D.C. 2014) (standards under APA and Mandamus are similar), citing *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010).

---

6       The Court notes that other district courts have found delays of three to four years for U-visa adjudication to be unreasonable, while concluding that delays within the realm of 1-2 years were reasonable.  *See Calderon-Ramirez v. McCament*, 877 F.3d 272 (7th Cir. 2017) (finding that delay of over 1 year was not unreasonable); *Camarena v. Cuccinelli*, No. 19 C 5643, 2020 WL 550597, at *3 (N.D. Ill. Feb. 4, 2020) ("[T]he Court cannot rule as a matter of law that the Agency's three-year delay in reviewing Camarena's U-Visa application is reasonable."); *Rodriguez v. Nielsen*, No. 16-CV-7092 (MKB), 2018 WL 4783977, at *18 (E.D.N.Y. Sept. 30, 2018) (finding that plaintiff stated a claim for unreasonable delay when the delay was three years); *Patel*, 400 F. Supp. 3d at 1384 ("[T]he Court cannot find as a matter of law that Defendants' four-year delay in deciding whether to place Plaintiff on the U Visa waiting list was reasonable.").  This Court would be inclined to adopt a similar approach, but unlike the courts that issued those opinions, this Court finds itself to be constrained by the D.C. Circuit's interpretation of the importance of the fourth *TRAC* factor.  *See A.C.C.S.*, 2019 WL 7841860, at *4; *Patel*, 400 F. Supp. 3d at 1384 (stating that the Court was unpersuaded that the fourth factor is dispositive).

IV.   **Interim Work Authorization Documents**

A.   **The Court has jurisdiction to review plaintiff's claim that he is entitled to interim work authorization documents under 8 C.F.R. § 274a.13(d).**

The 2011 version of 8 C.F.R. § 274a.13(d), which plaintiff asks the Court to apply here, stated with respect to interim employment authorization:

> USCIS will adjudicate the application within 90 days from the date of receipt of the application . . . . Failure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days.

The Third Cause of Action alleges under the APA, 5 U.S.C. § 706(1), agency action was unlawfully withheld because plaintiff's work authorization request was not adjudicated within 90 days, and he was not then granted the required interim work authorization documents.  Am. Compl. ¶¶ 55–59.

Defendants argue that the regulation as it exists today – which does not contain a timeline for adjudicating work authorization requests – applies, and since the agency was not required to act within a specific time period, the Court lacks jurisdiction to hear the Third and Seventh Causes of Action.[7]  *See* 5 U.S.C. § 701(a)(2); *Norton*, 542 U.S. at 64 (to bring a claim for agency action unlawfully withheld, the action must be a "discrete agency action that it is required to take"); 28 U.S.C. § 1361; *Monzel*, 641 F.3d at 534 (a plaintiff must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists, to show entitlement to mandamus).

---

7      Defendants also point to section 1252(a)(2)(B)(ii) in arguing that the Court is without jurisdiction to review this claim, *see* Defs.' Mot. at 14–15, but that statute would not preclude judicial review even if the current regulation applies, because section 1252(a)(2)(B)(ii)'s proscription of judicial review applies only to determinations committed to the discretion of the Attorney General or Secretary of Homeland Security *by statute*, not to those committed to agency discretion through regulation. *Kucana v. Holder*, 558 U.S. 233, 248–49 (2010).

Before the Court can decide whether it has jurisdiction to hear the claim, it must determine which version of the regulation applies. Because the 2011 rule was in effect when plaintiff filed his application, and it was still in effect when the 90-day period expired and the issuance of interim work authorization was mandatory, the Court finds that it applies.

"The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Because "[r]etroactivity is not favored in the law . . . congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). "By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.*

In *Landgraf v. USI Film Prods.*, the Supreme Court established a two-step framework for determining whether a statute or regulation could be retroactively applied. First, a court should look to whether Congress expressly provided that the statute be applied retroactively. 511 U.S. at 270. If "the statute contains no such express command," a court moves on to the second step, which examines whether the law has a "retroactive effect." *Id.* at 280. This analysis requires an assessment of "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event," as well as "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. A statute

is impermissibly retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 269 (internal quotation marks and citations omitted).

To determine whether rights have "vested," the Court looks to whether the person has "availed himself of them or [taken] action that enhanced their significance to him in particular." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 n.10 (2006). Any action taken must "elevate [the expectation] above the level of hope," and therefore actions that do little to substantially further the individual's expectation of relief are insufficient to create a vested right. *Id.*

Here, there is no provision in the immigration statutes that explicitly authorizes the agency to promulgate retroactive rules, and defendants do not contend otherwise. So the Court will move on to the second step in the analysis, and it finds that applying the amended regulation would take away "vested rights [that were] acquired under existing laws." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012).

Plaintiff applied for his work authorization documents on June 23, 2016. Am. Compl. ¶ 39. At the time, he had the right to have the request for work authorization be adjudicated within ninety days, or the agency was required to issue interim work authorization documents. 8 C.F.R. § 274a.13(d) (2011). Thus, by September 21, 2016, 90 days after the application was received by the agency, he had a vested right to interim work authorization documents. The application of the revised rule – which was effective as of January 17, 2017 – would strip plaintiff of that vested right. Thus, the new regulation "would have retroactive effect" that Congress did not authorize. *See Rodriguez*, 2018 WL 4783977, at *18 (finding that the 2011 version of 8 C.F.R. § 274a.13(d) applies to the plaintiff's work authorization request submitted with his U-visa application).

Therefore, the 2011 version of 8 C.F.R. § 274a.13(d) applies, and because the agency was required to issue plaintiff interim work authorization documents, the Court has jurisdiction to review the claim under the APA.  *See* 5 U.S.C. § 706(1), § 701(a)(2); *Norton*, 542 U.S. at 64.

**B.  Plaintiff has stated a claim for agency action unlawfully withheld under the APA.**

Section 706(1) of the APA states that a "reviewing court shall – (1) compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The Supreme Court has held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required* to take."  *Norton*, 542 U.S. at 65 (emphasis in original).

As previously stated, 8 C.F.R. § 274a.13(d) (2011) required EAD applications to be adjudicated within 90 days of receiving the application.  If the EAD request was not adjudicated, the agency was bound to issue interim work authorization documents for a period of no longer than 240 days.  8 C.F.R. § 274a.13(d) (2011).  Plaintiff alleges that the agency received plaintiff's application on June 23, 2016.  Am. Compl. ¶ 39.  He alleges that he was entitled to an adjudication of his EAD request by September 21, 2016, that since his EAD request was not adjudicated by this time, the agency was required to issue the interim work authorization documents.  *See* Am. Compl. ¶¶ 37, 56–57.

Defendants argue that "the 90-day clock has not started to run on any of [p]laintiff's filings under USCIS's pre-2017 interpretation of the regulation."  Defs.' Mot. at 23.  Defendants contend that because many requests for employment authorization, "including all relating to U nonimmigrant status, require USCIS to make some determination on an underlying benefit type before adjudicating eligibility for the requested type of employment authorization," the 90-day clock does not start to run until after a "threshold determination on the underlying benefit [has] been made."  Defs.' Mot. at 23, citing 8 C.F.R. § 274a.12(a)(19), (a)(20) (requiring that a petition

for U nonimmigrant status be approved before the EAD request can be adjudicated); *id.* § 274a.12(c)(14) (requiring that an alien be granted deferred action before an EAD can be granted on that basis).  Defendants maintain that any other interpretation of the regulation would be implausible considering that an individual can apply for work authorization documents on the face of the application for a U-visa, and Congress anticipated a high volume of U-visa petitions.  Defs.' Mot. at 24–25.

This interpretation of the regulation has no support in its plain language – the regulation states that USCIS "will" adjudicate work authorization requests within 90 days "of receipt of the application," not within 90 days of some threshold determination regarding the underlying benefit. 8 C.F.R. § 274a.13(d) (2011).  While the 90-day clock may have been overly ambitious and ultimately untenable given the ease with which U-visa applicants can simultaneously apply for EAD and the rising number of U-visa applications, it is evident that the government realized that the timeline was in force because it decided to repeal it.  *See* 80 Fed. Reg. 81,900, 81,928–29. Indeed, the agency decided to repeal it because it believed that the 90-day time frame was "outdated and no longer reflect[ed] the operational realities of the Department" and it "constrain[ed] DHS' ability to maintain necessary levels of security when application receipt volumes suddenly increase."  80 Fed. Reg. at 81,929.  This would have been unnecessary if the 2011 version was meant to be read as defendants seek to read it now.

Furthermore, the legislative history of the law creating U-visas reveals that Congress intended that U-visa applicants would to be able to seek and obtain work authorization documents even before their eligibility for the underlying benefit was determined.  *See* 154 Cong. Rec. H10,888, 10,905 (daily ed. Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865 (commenting that U-visa applicants "should not have to wait for up to a year before they

can support themselves and their families," and that the "Vermont Service Center should therefore strive to issue work authorization and deferred action in most instances within 60 days of filing, consistent with the need for safe and competent adjudication").

Thus, plaintiff has stated a claim under the APA that agency action has been unlawfully withheld, and the Third and Seventh Causes of Action will not be dismissed.  5 U.S.C. § 706(1).

## V.   Repeal of 8 C.F.R. § 274a.13(d) (2011) without proper notice and comment procedures

In his amended complaint, plaintiff alleges that the agency repealed the 2011 version of 8 C.F.R. § 274a.13(d) without undertaking the proper notice-and-comment procedures, in violation of the Administrative Procedure Act.  Am. Compl. ¶¶ 60–63.  Defendants argue that the rule did undergo the proper procedures, and it cites the Federal Register for support.  *See* Defs.' Mot. at 21–22, citing 80 Fed. Reg. 81,900 (Dec. 31, 2015).

Plaintiff does not respond to defendants' argument in his opposition to the motion to dismiss.  *See generally* Pl.'s Opp.  The Rules of this court provide:  "Within 14 days. . . or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion.  If such a memorandum is not filed . . ., the Court may treat the motion as conceded."  LCvR 7(b).  In accordance with that principle, "[i]t is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *CD Int'l Enters., Inc. v. Rockwell Cap. Partners*, Inc., 251 F. Supp. 3d 39, 46 (D.D.C. 2017), quoting *Young Habliston v. Finra Regulation, Inc.*, 2017 WL 396580, at *4 (D.D.C. Jan. 27, 2017) and citing *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002); *see, e.g.*, *Dunlap v. Presidential Advisory Comm. on Election*

33

*Integrity*, Civ. A. No. 17-2361 (CKK), 2020 WL 2800673, at *13 (D.D.C. May 29, 2020); *California v. Trump*, Civ. A. No. 19-960 (RDM), 2020 WL 1643858 at *16 (D.D.C. Apr. 2, 2020). Thus, the Court can find that this issue has been conceded in accordance with the Local Rules.

The Court concludes in any event that plaintiff has failed to state a claim under the APA for failure to comply with notice-and-comment procedures.  Plaintiff's Fourth Cause of Action contains the conclusory allegation that "[d]efendants' *de facto* repeal of their own rule . . . without required notice and comment procedures, violates . . . the Administrative Procedure Act."  Am. Compl. ¶ 61.   But the amended complaint is completely devoid of any factual allegations supporting this claim.  *See generally* Am. Compl.  Defendants have pointed the Court to the Federal Register notice that described the proposed amendment to the 90-day rule and the justification for repealing it.  *See* Defs.' Mot. at 21.  Typically, publication in the Federal Register is sufficient to give notice of the contents of a regulation or rule to those affected by it.  *Perez v. Mort. Bankers Ass'n*, 575 U.S. 92, 96 (2015), citing 5 U.S.C. § 553.  Furthermore, the Federal Register notice stated: "DHS welcomes public comment on all aspects of this proposal, including alternate suggestions for regulatory amendments to the 90-day processing timeframe and interim employment authorization provisions not already discussed . . . ."  80 Fed. Reg. at 81,928–29.  The first page of this Federal Register notice states that comments may be submitted online, by email, by mail, or by hand delivery, and details how to submit comments using these methods.  80 Fed. Reg. at 81,900.  The repeal of the regulation did not become final until two months later.  *See* 81 Fed. Reg. at 82,398.

For these reasons, and in the absence of any objection by the plaintiff, the Fourth Cause of Action will be dismissed.

**CONCLUSION**

For all of those reasons, defendants' motion to dismiss is granted in part and denied in part. The Court finds that it has jurisdiction to review the First and Fifth Causes of Action, but that Circuit precedent requires the Court to conclude that plaintiff has failed to state a claim for unreasonable delay, and those claims will be dismissed. The Court finds that it does not have jurisdiction over the Second and Sixth Causes of Action, and that plaintiff failed to state a claim in his Fourth Cause of Action. Thus, the only remaining claims are the Third and Seventh Causes of Action, asserting that the agency was required to issue plaintiff interim work authorization documents but failed to do so.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  September 28, 2020